799 So.2d 171 (2001)
James Earl JONES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KM-01021-COA.
Court of Appeals of Mississippi.
October 30, 2001.
*172 Gwendolyn Baptist Hewlett, John Keith Perry Jr., Attorneys for Appellant.
Office of the Attorney General by Dewitt T. Allred III, Attorney for Appellee.
Before KING, P.J., THOMAS, and LEE, JJ.
LEE, J., for the Court:
¶ 1. James Earl Jones was originally indicted for simple assault on a law enforcement officer; however, the jury found him not guilty of simple assault. Instead, he was found guilty of resisting arrest. Jones was sentenced to forty-five days in the DeSoto County Jail. Jones has filed a timely appeal from this sentence and presents the following issues: (1) whether the trial court erred in refusing to give Jones's requested jury instruction, (2) whether the alleged assault against Campbell constituted a misdemeanor outside of the officer's presence which required the officer to obtain a warrant prior to arrest for the arrest to be lawful, and (3) whether an arrest on an outstanding warrant for a misdemeanor contempt of court charge required the officer to either possess the warrant at the time of arrest, or tell Jones the cause of his arrest for the arrest to be lawful. This Court finds these issues without merit and affirms the decision of the trial court.

FACTS
¶ 2. Several portions of the record were not designated by Jones; the following are facts that were reflected in the portions that were designated. On the day in question, Jones was initially located by James Campbell, an Olive Branch code enforcer; Tim Gentry, an Olive Branch staff engineer; and Robert Millette, a Mississippi Department of Environmental Quality employee, on his property where excavating and rubbish-dumping activities were occurring. Campbell had been attempting to get Jones to stop the excavating. On this day, Campbell, Gentry, and Millette wished to serve a cease and desist order to Jones to stop the excavation. However, they did not possess the order at the time of the confrontation, and orally informed Jones that he needed to stop the excavation.
¶ 3. Campbell testified that as a result of the confrontation, Jones picked up a beam and acted as if he was going to throw it at the truck in which Campbell was driving. In response to Jones's actions, Campbell left the immediate area; however, he remained in close enough proximity to continue to observe Jones.
¶ 4. Campbell witnessed Jones leave the property and followed him to a place of business referred to as Landau. While following Jones, Campbell radioed his secretary, who in turn radioed the police regarding Jones's location. Once Jones and Campbell arrived at Landau, Jones entered the building, and Campbell waited for the arrival of the police. Meanwhile, *173 Gentry and Millette arrived to serve Jones with the cease and desist order.
¶ 5. Jones refused to accept the order. Thereafter, Jones got into his automobile and proceeded out of his parking place. While doing so, he "bumped" into the automobile in which Gentry and Millette were located. Jones then proceeded to drive around the parking lot. Eventually, Jones parked his automobile and re-entered Landau. While these events were occurring, police officers were being dispatched to Landau.
¶ 6. The officers were informed that Jones had committed a hit and run, and that there was an outstanding warrant for his arrest. There was some testimony that this warrant was the result of a contempt of court order due to Jones's failure to pay fines related to his excavation of the previously mentioned land. Once the officers arrived at Landau, they entered the building whereupon they observed Jones. The officers approached Jones, and attempted to handcuff him. It was at this time that Jones began to resist.
¶ 7. Jones would not give the officers his hands. Additionally, there was testimony that Jones had attempted to obtain one of the officer's firearm. The officers placed Jones on the floor where the struggle to handcuff Jones continued. As a result of Jones's failure to cooperate, one of the officers sprayed mace in Jones's eyes. Thereafter, they were able to handcuff Jones. Jones was then lifted by the officers and carried out of the building. The officers then placed Jones on the ground to perform a search for weapons. While on the ground Jones kicked one of the officers in the arm. Since Jones kicked the officer, leg cuffs were placed on him. The testimony of Campbell and Gentry confirmed that a struggle occurred between Jones and the officers outside of the building.
¶ 8. We are only provided with the direct examination testimony of Jones, who stated that "they (i.e., the police) just jumped me." He also stated that he was shocked "so [he] pulled back a little bit to see, you know, what, what was happening, you know."

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE JONES'S REQUESTED JURY INSTRUCTION.
¶ 9. Before we address Jones's argument, we notice that counsel for Jones has cited to Mississippi Rules of Civil Procedure Rule 51(b) to support his argument. We are obliged to inform counsel that since this case is criminal in nature, instead of civil, this rule is not persuasive as authority. See Mississippi Rules of Civil Procedure Rule 1. Having taken care of this matter, we now look to the substance of Jones's issue.
¶ 10. Jones contends that he presented sufficient evidence at trial to grant his request for a jury instruction regarding his right to defend his person by resisting an unlawful arrest. The State counters this argument by asserting that the issue is procedurally barred from review because it was not presented to the trial judge for a ruling.
¶ 11. As noted above, we only have segments of the record; however, the record does contain a written copy of jury instructions presented to the trial judge, as well as the reading of the granted instructions by the trial judge to the jury. Neither portion of the record reveals that Jones requested an instruction which stated that he had the right to defend himself because he was resisting an unlawful arrest. In fact the record indicates that a jury instruction conference and objections to instructions were reported but not transcribed *174 per Jones's designation of the record.
¶ 12. This Court observes that Jones's instruction number twelve was given and stated: "A person may resist his own ... arrest in which the police use excessive force." While there is a deletion in the instruction, there in nothing in the record to reflect what was stated in the missing words. This Court will not speculate.
¶ 13. "In Hansen v. State, 592 So.2d 114, 127 (Miss.1991), this Court stated: `It is elementary that a party seeking reversal of the judgment of a trial court must present this court with a record adequate to show that an error of reversible proportions has been committed and that the point has been procedurally preserved.'" Smith v. State, 729 So.2d 1191, 1201 (¶ 38) (1998) (citation omitted). Jones failed to preserve and present an adequate record for this Court's review. Therefore, we find this issue is procedurally barred.

II. WHETHER THE ALLEGED ASSAULT AGAINST CAMPBELL CONSTITUTED A MISDEMEANOR OUTSIDE OF THE OFFICER'S PRESENCE WHICH REQUIRED THE OFFICER TO OBTAIN A WARRANT PRIOR TO ARREST FOR THE ARREST TO BE LAWFUL.
¶ 14. Jones argues that the assault against Campbell constituted a misdemeanor outside of the officer's presence which required the officer to obtain a warrant prior to his arrest for the arrest to be lawful. Once again, the State asserts that this issue is procedurally barred because the issue was not presented for a decision by the trial court.
¶ 15. We agree that the record before this Court does not disclose that an objection made on the aforementioned basis was presented to the trial judge for a decision. Therefore, the issue is procedurally barred. See Jones v. State, 606 So.2d 1051, 1058 (Miss.1992). However, we note that this issue might not have been argued in the lower court because it is really a non-issue.
¶ 16. The officers testified that they were informed that Jones was present at Landau and that he was the culprit of a "hit-and-run" incident. However, more importantly they testified that the dispatcher informed them that there was an outstanding warrant for Jones's arrest. The officers had every right to arrest Jones, not necessarily based on any confrontation with Campbell, but because of the information they received regarding Jones's outstanding warrant for arrest. See Williams v. Lee County Sheriff's Dept., 744 So.2d 286, 293-94 (¶ 17) (Miss. 1999). Therefore, this issue is without merit.

III. WHETHER AN ARREST ON AN OUTSTANDING WARRANT FOR A MISDEMEANOR CONTEMPT OF COURT CHARGE REQUIRED THE OFFICER TO EITHER POSSESS THE WARRANT AT THE TIME OF ARREST, OR TELL JONES THE CAUSE OF HIS ARREST FOR THE ARREST TO BE LAWFUL.
¶ 17. Jones asserts that since the officers neither possessed nor informed him of the outstanding warrant, his arrest was unlawful. However, as mentioned by the State, the record fails to reflect that Jones made an objection on this ground before the trial court. Since Jones failed to present this argument in the lower court, it is not properly before our Court and is procedurally barred. See Jones, 606 So.2d at 1058. Acknowledging that a procedural bar is in place, we now examine the merits of the issue.
*175 ¶ 18. Similar to the case at bar, we once again find authority in Williams v. Lee County Sheriff's Dept., where the Mississippi Supreme Court was presented with the following argument:
Williams also argues that the officers did not inform him of the arrest warrants while he was being arrested and did not tell him the reason for his arrest. Subject to some exceptions, Miss.Code Ann. § 99-3-7 requires an officer to inform an accused of the "object and cause of the arrest without a warrant." Williams claims that this omission makes his arrest illegal. This Court has held that the failure to inform a defendant of the object and cause of the arrest does not invalidate the arrest in certain incidences. Failing to tell a defendant why he is being arrested simply shifts the burden of proving probable cause to the state. Thus, assuming that the officers did not tell Williams why he was being arrested, the question becomes whether the officers had probable cause to arrest him.
Whether the officers had probable cause to arrest Williams depends on whether at the time of the arrest "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that Williams had already committed a crime. This Court has held that "probable cause exists when facts and circumstances within an officer's knowledge, or of which he has reasonable trustworthy information, are sufficient themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it."
[I]information provided to arresting officer by law enforcement source provide(s)... sufficient probable cause to make an arrest.
Williams, 744 So.2d at 294-95 (¶ 19-21) (citations omitted). As in Williams, the officers in the case at bar were entitled to rely on the information they received from the law enforcement dispatcher. Since the simple assault charge was a result of the actions taken by the officers on the outstanding arrest warrant there was no error. Accordingly, this issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF RESISTING ARREST AND SENTENCE OF FORTY-FIVE DAYS IN THE DESOTO COUNTY JAIL IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.