# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-01782-SCT

*KIRBY DIES a/k/a KIRBY DONOVAN DIES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/25/2004 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GARY STREET GOODWIN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/20/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Kirby Donovan Dies is before this Court on appeal of his conviction for possession of cocaine in the Lowndes County Circuit Court.  He was sentenced to serve eight years in the custody of the Mississippi Department of Corrections, and pay a $50,000 fine as habitual offender. On appeal, Dies argues that the trial court erred: (1) by overruling the defendant's pretrial motion to dismiss for violation of the statutory 270-day rule; and (2) by denying the

defendant's motion to suppress evidence obtained as it was the result of an illegal seizure. Finding no merit to these arguments, we affirm the trial court.

**FACTS**

¶2.     During the early morning hours of May 1, 2002, Agents Brent Young and Wes Stapp of the Mississippi Bureau of Narcotics (the agents) were dispatched to the Office Sports Bar (the bar) in Columbus, Mississippi. They had received a call about a "female of interest" who was either in possession of narcotics or trying to sell narcotics at that location. Upon arriving at the bar they parked in the parking lot located at the rear of the building. As they were pulling into the parking lot, Young noticed three individuals, one female and two males, sitting in a red camaro near the corner of the building.

¶3.     The agents decided to wait for the individuals in the red camaro to exit their vehicle and enter the bar before they did the same, because Stapp had been a uniformed police officer in Columbus, and was concerned that he might be recognized. Other than the gender of the individuals in the vehicle, the agents were not able to ascertain any other descriptive information. The agents exited their vehicle and walked to a nearby window to look inside the bar to see if a woman matching the description that they were given was present. They did not see any such woman and therefore returned to their vehicle.

¶4.     As they were returning to their vehicle they passed near the red camaro and noticed the distinct smell of burnt marijuana. The agents traced the smell back to the red Camaro which had its passenger window rolled-down one to two inches, and then contacted the

2

Columbus Police Department and requested that a K-9 unit come to meet them. The agents agreed that they wanted to investigate further but not in the bar's parking lot. They contacted the Columbus Police Department because they wanted to conduct a traffic stop away from their present location. The agents testified that the bar was about to close and the parking lot would soon be crowded with patrons, some under the influence of alcohol. Therefore, they desired a confrontation away from this environment. Further, they needed the Columbus Police Department's assistance because they were in an unmarked vehicle and lacked the blue lights necessary to indicate a traffic stop.

¶5.     Officer Wade Beard of the Columbus Police Department met the agents at the Creekstone Chevron, located across the street from the bar, where they had a full view of the exit and entrance to the parking lot. The agents told Beard that they smelled burnt marijuana in a parked car and they wanted him to conduct a traffic stop along the roadway after the car left. They gave him a full description of the car and alerted him when it left. Beard followed the red camaro for a short period of time and then initiated his blue lights. The car did not immediately respond and continued down the street for approximately 1/10th of a mile before pulling into a driveway of a residence that joined the road. The agents followed Beard but remained in support of him at a safe distance. Once stopped, an individual, later determined to be Dies, exited the driver's side of the red camaro and fled on foot into the wooded area along the driveway. The agents pursued him, first by car and then on foot, into the wooded area.

3

¶6. The individual was located in the woods and placed under arrest for failure to yield, disobeying a police officer and resisting arrest. As the agents returned to the road with the arrested subject, they were informed by another officer that someone had dropped something on the ground. On the ground near the side of the road Young found several bags of a substance that later was identified as marijuana. There were five bags, four of which contained marijuana and one that was empty. Young then conducted a search incident to arrest of the subject and on his person found a sixth bag of a substance, which was in similar packaging to the ones that were found lying on the ground, and also discovered rolling papers and a powdery white substance which was later identified as cocaine.

## I. THE 270-DAY RULE

¶7. Dies asserts that his statutory right to a speedy trial under Miss. Code Ann. Section 99-17-1 (Rev. 2000) was violated, but does not assert a constitutional violation. The statute, commonly referred to as the 270-day rule, reads as follows:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

Miss. Code Ann. § 99-17-1 (Rev. 2000). When the accused is not brought to trial within 270 days, absent good cause, the defendant is entitled to dismissal. *Reynolds v. State*, 784 So.2d 929, 933 (Miss. 2001). Dies alleges that the State violated the 270-day rule when he was indicted on August 9 and arraigned on August 23, 2002 but not tried until August 23, 2004. Therefore, Dies argues he is entitled to have his conviction reversed and the indictment

4

dismissed with prejudice. We disagree, based on our careful review of the record, and the analysis which follows.

¶8.    This Court has created a two-step test for dealing with 270-day rule analysis. The first step is to determine the total number of days between arraignment and trial.[1] *Manix v. State*, 895 So. 2d 167, 174 (Miss. 2005); *Sharp v. State*, 786 So. 2d 372, 378 (Miss. 2001). For this purpose, the date of arraignment is not counted but the date of trial and weekends are counted unless the 270th day falls on a Sunday. *Adams v. State*, 583 So. 2d 165, 167 (Miss. 1991). The second step is to consider each delay separately, because only those delays attributable to the State count toward the 270 days. *Manix*, 895 So. 2d at 174; *Baine v. State*, 604 So. 2d 258, 264 (Miss. 1992). For the second step this Court must determine which party is responsible for the delay and their reason. *Sharp*, 786 So. 2d at 377.

¶9.    The August 23, 2002, arraignment order was signed as "agreed" by state and defense counsel, and the trial was set for December 3, 2002. "The necessary time for the accused and his counsel to prepare his trial must necessarily be left largely to the sound discretion of the trial judge, bearing in mind the facts and circumstances of the particular case." *Sharp,* 786 So. 2d at 378 (quoting *Wiley v. State*, 582 So.2d 1008, 1012 (Miss.1991); *Gilmore v. State*, 225 Miss. 173, 189, 82 So.2d 838, 846 (1955)). This time period does not appear to

---

[1] This Court has been clear that the clock starts at the time of arraignment and not at the time of arrest. *Handley v. State*, 574 So. 2d 671, 674 (Miss. 1990). The time period prior to arraignment is not relevant in 270-day rule cases. *Nations v. State*, 481 So. 2d 760, 761 (Miss. 1985).

5

be overly lengthy for preparation of a drug related offense and therefore does not count against either the State or Dies. *See **Sharp***, 786 So. 2d at 378. The trial court docket reflects that an agreed order of continuance was filed on December 4, 2002, apparently referring to an agreed order entered that date, setting Dies' motion for a suppression hearing for February 10, 2003. A subsequent order, filed February 27, reset the suppression hearing for May 6, 2003, and counsel for both defense and prosecution agreed. The record is silent as to any hearing[2] on May 6, which was a motion day, but an agreed order was signed and entered on May 13, 2003, stating that the state's motion for trial setting, joined by the defendant, must be continued due to "case not set for trial/continued from motion day", and setting for trial on May 27. Although the court docket indicates that an agreed order of continuance was signed and entered, nunc pro tunc, on May 30, 2003, continuing the trial date from May 27, 2003, until August 26, 2003, the order itself does not indicate agreement. However, the order states as cause for the continuance, that "the State was in trial in another cause, another Judge was not available to hear another jury trial, and Friday, May 30, 2003, is the last day of the present term of Circuit Court." The court then ordered that the "cause be continued to the next term" and rescheduled the trial for August 26, 2003. The same problem arose on August 26, and another order of continuance was signed and filed, nunc pro tunc, on September 5, 2003, which continued the trial until November 18, 2003, similarly stating "the

---

[2]The transcript of the trial reflects that Dies' suppression motion was heard on the day of trial.

6

trial court was in trial on another cause, and there were no additional trial dates available in this term of court to hear this case." Dies argues this delay was attributable to the State because the State can choose which case to bring and the trial court had the right to extend its term.

¶10. However, in both instances, the trial court found the motion was well taken and issued the continuance. No challenge to these continuances, nor the reason they were ordered, was raised by Dies. This Court has held that even though the statutory 270-day rule exists to protect a defendant's rights, it does not relieve the defendant from the obligation of vigorously pursuing them. *Walton*, 678 So. 2d 645, 650 (Miss. 1996). Dies failed to object to the State's requests for continuances and only pursued his speedy trial right on June 3, 2004, after nine continuances had been granted. Although a defendant may have the right to procure a speedier trial than that afforded to him by the State, this Court does not reward him who sits on his rights.

¶11. A trial court's finding that a motion for continuance is well taken, is the equivalent of a judicial finding of good cause. *Reynolds*, 784 So. 2d at 933. A trial court's finding of good cause is a finding of fact and should be treated on appeal as such; therefore a reviewing court should not disturb it where there is substantial credible evidence in the record supporting that finding. *Walton*, 678 So. 2d at 649 (citing *McNeal v. State*, 617 So. 2d 999, 1007 (Miss. 1993); *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991)). Likewise, this Court will not affirm a trial court's finding of fact if the trial judge applied an erroneous legal

7

standard. **Walton**, 678 So. 2d at 649 (citing **Leatherwood v. State**, 539 So. 2d 1378, 1387 (Miss. 1989)).

¶12. This Court has held that a trial court's decision to grant a continuance because of docket congestion did not abuse this standard. **Sharp**, 786 So. 2d at 378. However, there must be more than just a bald faced statement without some further substantiation. In **Vickery v. State**, 535 So. 2d 1371, 1375 (Miss. 1988),  the trial court entered boilerplate orders stating simply "[f]or good cause shown the following numbered criminal cases are continued to the next regular term of this court, said causes are numbered on the docket of this court as follows . . . ."  The orders then listed as many 126 cases which were to be continued to the next term.  This Court held that the trial court's actions in entering 8 "bland and generic" orders such as this circumvented the statute and was tantamount to abolishing it. **Vickery**, 535 So. 2d at 1375.  The orders for continuance in the present case contained specific explanations as to why they were granted, and only addressed the present case and are in no way analogous to the  "bland and generic" orders decried in **Vickery**. *See **Walton***, 678 So. 2d at 649.  Our review of the record leads to the conclusion that there was substantial evidence of real docket conflicts and congestion which meets the standard of "good cause shown". Thus, these delays meet the standard set in Section 99-17-1, and the clock stopped against the State and did not count toward the 270-day rule.

¶13. The  next delay, from November 18, 2003 until December 3, 2003, is unaccounted for by the record.  There is no indication in the record why this delay occurred and fault was not

assigned. When the record is silent as to the reason for delay, the clock runs against the State; this Court has held that the State bears the risk of non-persuasion as to good cause. *Nations*, 481 So. 2d at 761. Therefore, this 15-day period counts against the State.

¶14. The clock is tolled from December 3, 2003 until February 17, 2004 because Dies' attorney requested a continuance due to a conflict with another trial. *See Baines*, 604 So. 2d at 264. The next period from February 17, 2004 until February 19, 2004, was due to a conflict in scheduling with one of the State's forensic experts. This two-day period does not count against the State. This Court has held that the absence of a material witness falls within the definition of good cause. *Sharp*, 786 So. 2d at 380. Therefore, the absence of the State's forensic expert qualifies as good cause.

¶15. The next order of continuance signed and filed, nunc pro tunc, on February 27, 2004 stayed the proceeding from February 19, 2004 until May 13, 2004, because Judge Lee J. Howard was involved in a bench trial on February 19, and "this is a case which must be tried by Judge Howard, as Judge James T. Kitchens[3] was an Assistant District Attorney when this case was indicted by the grand jury." Although we find no precedent directly on point regarding such reason for delay, the Court of Appeals dealt with a similar issue in *Alexander v. State*, 841 So. 2d 1138 (Miss. Ct. App. 2002). In *Alexander* the two circuit judges in Tippah County were forced to recuse themselves prior to trial, and another judge had to be

---

[3]Judge Kitchens was appointed to fill the vacancy which occurred upon the retirement of Judge John M. Montgomery, to whom this case was first assigned.

appointed to hear the case. *Alexander*, 841 So. 2d at 1145. Because, the replacement judge had his own docket and caseload from another circuit he could not immediately hear the defendant's case. *Id*. The Court of Appeals found that the delay caused by seeking a new judge could not be attributed solely to the State. *Id*. The present case is clearly analogous to that situation, and finding the Court of Appeals' approach legally sound, we hereby adopt it. At present, it is clear that the original judge's retirement and his replacement by the assistant district attorney who was prosecuting this case was no fault of either the State or Dies, but rather was an act required to protect the rights of the defendant. Thus, we hold that the delay necessitated by Judge Howard's scheduling conflict is good cause shown. The reason for the next continuance, from May 13, 2004 until May 25, 2004, entered by the court "sua sponte"and joined by the State, is unexplained. Therefore, those 12 days are assessed against the State. *Nations*, 481 So. 2d at 761.

¶16. The trial court issued the next continuance, moving the trial from May 25, 2004 to August 17, 2004, again because the trial of another case carried over into that date, and the court found "there are no additional dates left during this term of Court on which this cause can be tried." As discussed supra, this time is not assessed against the State, because good cause existed for the continuance.

¶17. The final continuance was ordered upon motion of the State, moving the trial date to August 23, due to the unavailability on the 17th of both agents Wes Stapp and Brent Young, one having been subpoenaed to testify in Arkansas before a federal grand jury and the other

10

for medical purposes. This seven day period does not count against the State. This Court has held that the absence of a material witness falls within the definition of good cause. *Sharp*, 786 So. 2d at 380. Therefore, the absence of the State's key law enforcement witnesses qualifies as good cause.

¶18. The trial started on August 23, 2004, thereby ending the time period for calculation of the 270-day rule. Upon careful review of record, we conclude that of the 731 days between the date of Dies' arraignment and the trial, only 47 must be assessed solely to the State. Agreed continuances account for 281 days. Of the remaining delays, 76 days were attributable to Dies, and the remaining 327 days were excused for good cause shown, pursuant to Section 99-17-1. There is no merit to Dies' argument that the 270-day rule was violated.

## II. SUPPRESSION OF EVIDENCE

¶19. Dies argues that the evidence obtained as a result of the traffic stop and his subsequent arrest should have been suppressed. He argues that the traffic stop was illegal because it was not based on reasonable suspicion and therefore, all evidence subsequently obtained was fruit of the poisonous tree. In the alternative, Dies argues that his arrest was illegal because the agents lacked probable cause to initiate a warrantless arrest.

¶20. In reviewing this issue, this Court adopts a mixed standard of review. Determinations of reasonable suspicion and probable cause should be reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *Floyd v. City of Crystal*

11

*Springs*, 749 So. 2d 110, 113 (Miss. 1999). However, this Court is restricted to a de novo review of the trial judge's decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards. *Floyd*, 749 So. 2d at 113.

¶21. This Court has found that the Fourth Amendment to the United States Constitution and Article 3 Section 23 of the Mississippi Constitution contain almost identical language expressing an individual's right to be free from unreasonable searches and seizures. *Id*. at 114. This prohibition applies equally to seizures of the person and brief investigatory stops including those of a vehicle. *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). This Court has opined that a police officer's law enforcement activities can be divided into three types:

> (1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause.

*Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975).

¶22. This Court has held that a person may be detained short of a full arrest for investigatory purposes. *Jones v. State*, 841 So. 2d 115, 125 (Miss. 2003). The constitutional requirements for an investigative stop are less stringent than those for a full arrest. *Floyd*, 749 So. 2d at 114. This Court allows an investigative stop as long as an officer has "reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is

12

wanted in connection with a felony . . . or as long as the officers have some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." *Id.* (internal citations omitted). This Court must consider, in taking into account the totality of the circumstances, whether the officer had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (citing *Cortez*, 449 U.S. at 417-18).

¶23. In *Miller v. State*, 373 So. 2d 1004, 1006-07 (Miss. 1979), this Court first addressed the issue of the plain smell corollary to the plain view doctrine. In *Miller,* this Court found the sense of smell to be no less important or trustworthy than the sense of sight. *Id.* at 1006. It was in *Miller* that this Court first stated that probable cause may come from any one of an officer's five senses, including an officer's sense of smell. *Id.* at 1007. If an officer clearly smells contraband, such as marijuana, that smell can give rise to the probable cause necessary to search a vehicle and its passengers. *Boches v. State*, 506 So. 2d 254, 264 (Miss. 1987). Because smell alone can give rise to a search of the passengers and compartment of a stopped vehicle, it also can give rise to the lower standard for reasonable suspicion and support an officer's desire to further his investigation of the recent passengers of a vehicle.

¶24. The record clearly reflects that the agents identified the smell of burnt marijuana, and their experience with the Mississippi Bureau of Narcotics exposed them to that smell on multiple occasions. They were able to trace the smell back to the red camaro through an open window. They came to this knowledge while remaining outside of the vehicle in space that

13

was open to the public. The agents in no way entered into a space in which Dies had a reasonable expectation of privacy. The smell of burnt marijuana coming from an identified location, such as a car, creates enough articulable fact to give rise to a reasonable suspicion that criminal activity had been committed and that further investigation is warranted. Police officers have a duty not only to search out those who commit reported crimes but also to investigate unreported activity whenever circumstances indicate that they should. *Floyd*, 749 So. 2d at 117 (citing *United States v. West*, 460 F.2d 374, 375-76 (5th Cir. 1972)). The Fourth Amendment does not require police who lack the information necessary for probable cause to simply shrug their shoulders and allow a crime or a criminal escape to occur. Rather, it allows for investigatory stops to encourage the police to pursue their reasonable suspicions. *Singletary*, 318 So. 2d at 877.

¶25. The agents took appropriate actions given the circumstances. Dies argues that because the agents were unable to identify the individuals who were in the car when they arrived at the bar as the same ones who later were pulled over by Officer Beard, their traffic stop was illegal. That assertion is incorrect. The two events are not too remote in time to dull the reasonable suspicion that was present. When the agents arrived at the bar, they witnessed three people sitting in the red camaro. Shortly after their arrival those individuals left and went inside the bar. A short time after that, the agents perceived the smell of burnt marijuana and traced it to its source, thereby tying their reasonable suspicion to the vehicle and its recent occupants.

14

¶26.    The agents remained in surveillance of the red camaro for forty-five minutes. Admittedly, they could not see if anyone else came or went from the vehicle but they were aware that it did not leave the parking lot during that time. It is reasonable to believe that the individuals who were in the vehicle when the agents arrived were the same ones who would leave forty-five minutes later in that same vehicle. The time period here is not long enough to negate the agents' reasonable suspicion.

¶27.    Dies argues that the subsequent traffic stop was illegal and points to *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d. 89 (1996) and *United States v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001) for support. Dies argues that Beard's traffic stop was pretextual, but then claims that Beard lacked the pretext to stop him. However, both *Whren* and *Escalante* are factually distinguishable from this case. In both those cases, the officer had a hunch that some type of criminal activity was occurring but was not aware of what that activity was; therefore, he used the pretext of a traffic stop for a valid traffic violation to further his investigation. In the present case that was not the intention or the purpose of the traffic stop. In the present case the traffic stop was based on the reasonable suspicion that illegal narcotics *were* being used. That was the crime the agents sought to investigate. They did not need to perform a pretextual stop. Therefore, we find the agents had the right to stop Dies.

¶28.    The agents did not use the traffic stop to search for evidence of wrong doing but rather to confirm their reasonable suspicion that already existed. They chose a traffic stop because

15

of the exigencies of the circumstances. They knew the bar was going to close and that soon the parking lot would be filled with patrons, some under the influence of alcohol. A confrontation in the parking lot would have increased the risk to their person beyond what was expected during a traffic stop. Also, if the occupants recognized the agents waiting for them, they might not have returned to the red camaro. Therefore, this is acceptable police behavior.

¶29.    Dies also argues that any reasonable suspicion the agents may have possessed was not transferred to Beard who performed the traffic stop; therefore, Beard's stop was illegal. We do not agree with this argument. This Court has held that reasonable suspicion and probable cause can be transferred from officer to officer and police department to police department. *Jones*, 841 So.2d at 126. This Court clearly laid out the history of this in *Jones*:

> The reasonable belief of WCSO of Jones's involvement in the murder could be transferred to Memphis police. **In *Williams v. Lee County Sheriff's Department*, 744 So.2d 286 (Miss. 1999),** this Court held that officers in Mississippi were entitled to rely on information they received from California law enforcement authorities who informed them that a murder had been committed in California and that a person with the defendant's social security number and physical characteristics had committed it. *See also **Hamburg v. State***, 248 So.2d 430, 432 (Miss. 1971) (information provided to arresting officer by law enforcement source provided sufficient probable cause to make an arrest)**; *Parks v. State***, 180 Miss. 763, 178 So. 473 (1938) (where information of a crime provided by sheriff of one county to sheriff of another county held sufficient probable cause to justify warrantless arrest by the former). An officer's reliance on computer reports, radio communications, and dispatcher information have been held to confer sufficient probable cause for arrest. *See **Mitchell v. State***, 792 So.2d 192 (Miss. 2001) (radio communication); ***Jones v. State***, 481 So.2d 798 (Miss. 1985) (radio)**; *Hodge v. State***, 801 So.2d 762 (Miss. Ct. App. 2001) (computer report); ***Jones v. State***, 799 So.2d 171 (Miss. Ct. App. 2001) (dispatcher). Moreover, it is settled law in Mississippi that an informant may provide officers with sufficient probable cause to make a warrantless arrest. *See **Abram v. State***, 606 So.2d 1015 (Miss.

16

1992); *Moore v. State*, 493 So.2d 1295 (Miss. 1986), *Jones v. State*, 358 So.2d 414 (Miss. 1978). There is no reason why information received from another law enforcement official, who has a sworn duty to uphold the law, should be any less reliable than information received from an informant who's credibility, in many situations, is uncertain.

*Jones*, 841 So. 2d at 126-27.

¶ 30.   Clearly suspicion and probable cause can be transferred among law enforcement personnel. When the agents described the information they had obtained to Beard and requested his help with a traffic stop, their reasonable suspicion transferred to him. Therefore, when Beard acted, he did so with the reasonable suspicion that the agents had given to him.

¶ 31.   Dies also argues his arrest was illegal because the agents lacked probable cause. Dies argues that if the agents lacked probable cause to arrest him at the time of the traffic stop, he could not have been later arrested for resisting arrest. This Court held that if a suspect flees from the police when he has been detained on reasonable suspicion, the officers acquire probable cause to effectuate an arrest. *Mitchell v. State*, 792 So. 2d 192, 204 (Miss. 2001) (citing *Sibron v. New York*, 392 U.S. 40, 66-67, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)). The agents possessed reasonable suspicion that Dies was engaged in criminal activity. His flight from Beard created the probable cause for which he was lawfully arrested.

¶32.   This Court finds that both the seizure and arrest of Dies were legal. The agents possessed reasonable suspicion that Dies was engaged in criminal activity. They transferred this reasonable suspicion to Beard who sought to aid by performing a traffic stop for the purposes of furthering the investigation. When Dies fled from the traffic stop the agents had

17

the probable cause necessary to arrest him. Therefore, the evidence subsequently found on his person was admissible against Dies and was not fruit of the poisonous tree.

## CONCLUSION

¶33. The trial court correctly denied Dies' motion to dismiss because there was no violation of the statutory 270-day rule. Further, Dies' seizure and arrest were legal. Therefore we affirm Dies' conviction and sentence.

¶34. **CONVICTION OF POSSESSION OF COCAINE IN AN AMOUNT GREATER THAN .1 GRAM BUT LESS THAN 2 GRAMS AND SENTENCE OF EIGHT (8) YEARS, AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAYMENT OF A FINE OF $50,000.00, AFFIRMED. SAID SENTENCE SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL SAID APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**