IRVING, P.J.,
 

 for the Court:
 

 ¶ 1. On November 20, 2008, Robert Spurlock was convicted of possession of at least one kilogram but less than five kilograms of marijuana with intent to distribute. The Pike County Circuit Court sentenced Spurlock to fifteen years in the custody of the Mississippi Department of Corrections, with ten years to serve and five years of post-release supervision. On December 1, 2008, Spurlock filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which the circuit court denied. On October 22, 2009, Spurlock filed a pro se petition for an out-of-time direct appeal, which the circuit court granted. On appeal, Spurlock argues that the circuit court erred in denying his pretrial motion to suppress evidence.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. In September 2007, Spurlock returned to his hometown in Pike County, Mississippi, to visit his ailing grandmother. While there, he reconnected with a high-school friend, Thomas Magee Jr. Spurlock allegedly told Magee that he had marijuana that he wanted to sell, and Spurlock asked Magee if he knew of anyone who would buy it. Magee contacted a former co-worker, Willie Jefferson, and arranged the transaction. According to Magee, Spurlock later met Magee at a local hotel with a ten-pound brick of marijuana, which Spurlock and Magee broke into one-pound bags. Magee then took Spurlock to Jefferson’s home, and Spurlock sold Jefferson a one-pound bag of marijuana. Jefferson called Magee later and requested three more pounds. According to Magee, he and Spurlock agreed to meet Jefferson the next day.
 

 ¶ 4. The following day, the local police and officers from the Mississippi Bureau of Narcotics (MBN) arrived at Jefferson’s home to execute a search warrant.
 
 [1]
 
 During the search, Jefferson’s telephone rang. One of the officers assisting with the search answered the telephone. The caller, who did not identify himself, asked, “Are you ready to re-up?” The officer responded, “Bring it on.” He then informed the other officers that someone was approaching the home, possibly to deliver drugs. The officers set up a roadblock along the street that ran in front of Jefferson’s home. Shortly after, Magee and Spurlock arrived in Magee’s pickup truck. Officer Derrick Carr stopped Ma-gee and Spurlock and asked them for identification. Magee stated that he did not have identification, and Spurlock provided his military ID. Officer Carr, who was standing beside the driver’s side of the truck, noticed that Magee had an open container of beer between his legs. Officer Carr testified that he also smelled marijuana coming from the truck. As Officer Carr spoke with Magee, an officer standing beside the passenger side of the truck noticed a handgun on the floorboard, near Spurlock’s feet. The officers re
 
 *813
 
 moved both Magee and Spurlock from the truck and handcuffed them. Officer Carr then asked Magee for consent to search the truck. Magee consented to the search. During his search of the vehicle, Officer Carr recovered a backpack from the bed of the truck. The backpack, which had an Army logo, contained five pounds of marijuana broken into one-pound bags, finger scales, and small folding sandwich bags. Agent Billy Ray Warner, an MBN officer, testified that $1,914 was also recovered during the search. Agent Warner testified that a portion of the money was found in Spurlock’s pocket.
 

 ¶ 5. Prior to trial, Spurlock filed a motion to suppress the marijuana seized from the vehicle. In his motion, Spurlock argued that the officers did not have probable cause to stop and search the vehicle; therefore, the evidence obtained from the search should be suppressed. The circuit court denied the motion, finding that neither the roadblock nor the search of the truck violated the Fourth Amendment of the United States Constitution. The circuit court reasoned that the telephone call that the officers received at Jefferson’s home gave them reasonable suspicion that an illegal act was imminent. Therefore, the roadblock was not unconstitutional. The circuit court further noted that the officers had probable cause to search the truck given Magee’s open container of beer, the handgun on the passenger-side floor board, and the strong odor of marijuana coming from the truck.
 

 ¶ 6. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
 

 ANALYSIS AND DISCUSSION OF THE ISSUE
 

 ¶ 7. When reviewing a trial court’s denial of a motion to suppress, an appellate court employs a “mixed standard of review.”
 
 Dies v. State,
 
 926 So.2d 910, 917 (¶ 20) (Miss.2006). “Determinations of reasonable suspicion and probable cause should be reviewed de novo.”
 
 Id.
 
 (citing
 
 Ornelas v. United States,
 
 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). A trial court’s decision to admit or exclude evidence is reviewed under the abuse-of-discretion standard.
 
 Chamberlin v. State,
 
 989 So.2d 320, 336 (¶ 52) (Miss.2008).
 

 ¶ 8. Spurlock argues that the police roadblock was unconstitutional; therefore, the evidence seized after police stopped and searched the vehicle should have been suppressed. The State contends that this Court is barred from reviewing this issue because Spurlock failed to include a copy of the transcript from the suppression hearing in the record. The appellant is responsible for providing a “record sufficient to show the occurrence of the error he asserts.”
 
 Acker v. State,
 
 797 So.2d 966, 971 (¶ 18) (Miss.2001) (quoting
 
 Lambert v. State,
 
 574 So.2d 573, 577 (Miss.1990)). However, we believe that Spurlock has presented an appellate record sufficient to support his assignment of error. Spurlock has provided his motion to suppress along with the order denying the motion. Therefore, we do not find that Spurlock’s failure to include a transcript from the suppression hearing precludes appellate review.
 

 ¶ 9. Both the United States Constitution and the Mississippi Constitution protect “an individual’s right to be free from unreasonable searches and seizures.”
 
 Dies,
 
 926 So.2d at 917-18 (¶ 21) (citing
 
 Floyd,
 
 749 So.2d at 114 (¶ 14)). The prohibition against unreasonable searches and seizures extends to brief investigatory stops of a vehicle.
 
 Id.
 
 at 918 (¶ 21). However, “[t]he constitutional requirements for an investigative stop are less stringent than those for a full arrest.”
 
 Id.
 
 at (¶ 22) (cit
 
 *814
 
 ing
 
 Floyd,
 
 749 So.2d at 114 (¶ 16)). The Mississippi Supreme Court has held that investigative stops are permissible, provided that an officer has “reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony or as long as the officers have
 
 some objective manifestation that the person stopped is, or is about to be[,J engaged in criminal activity.” Id.
 
 (quoting
 
 Floyd,
 
 749 So.2d at 114 (¶ 16)) (emphasis added).
 

 ¶ 10. In
 
 Dies,
 
 MBN agents learned that a woman was either in possession of or trying to sell narcotics at a local bar.
 
 Id.
 
 at 913 (¶ 2). When the agents arrived at the bar, they noticed a woman and two men sitting in a red Chevrolet Camaro in the bar’s parking lot.
 
 Id.
 
 Other than the gender of the individuals, the agents had no other descriptive information.
 
 Id.
 
 at (¶ 8). The agents waited to approach the car until the group had exited the Camaro and entered the bar.
 
 Id.
 
 As the agents passed the Camaro, they noticed the smell of burnt marijuana.
 
 Id.
 
 at (¶ 4). The agents wanted to investigate further, but not in the bar’s parking lot.
 
 Id.
 
 The agents asked local police to conduct a traffic stop.
 
 Id.
 
 The agents gave police a description of the Camaro and alerted police when the car left the bar.
 
 Id.
 
 at (¶ 5). Shortly thereafter, the police stopped the Camaro, and Kirby Dies exited the car and fled.
 
 Id.
 
 at 914 (¶ 5) The police captured and arrested Dies, and during a search incident to his arrest, the police discovered a bag containing marijuana, rolling papers, and cocaine.
 
 Id.
 
 at (¶ 6).
 

 ¶ 11. Dies filed a motion to suppress, arguing that the traffic stop was illegal because it was not based on reasonable suspicion.
 
 Id.
 
 at 917 (¶ 19). Our supreme court held that the smell of burnt marijuana emanating from the Camaro “[gave] rise to a reasonable suspicion that criminal activity had been committed and that further investigation [was] warranted.”
 
 Id.
 
 at 918-19 (¶ 24). Our supreme court went on to note that “[t]he Fourth Amendment does not require police who lack the information necessary for probable cause to simply shrug their shoulders and allow a crime or a criminal escape to occur. Rather, it allows for investigatory stops to encourage the police to pursue their reasonable suspicions.”
 
 Id.
 
 at 919 (¶24) (citing
 
 Singletary v. State,
 
 318 So.2d 873, 877 (Miss.1975)).
 

 ¶ 12. In this case, the police received a phone call from an unidentified male while executing a search warrant at Jefferson’s home. When police answered, the caller asked, “Are you ready to re-up?” Before receiving the call, the police had uncovered marijuana, ecstacy, and handguns in Jefferson’s home. While the police did not have any identifying information for the caller other than his gender, they reasonably suspected that someone was approaching Jefferson’s home with contraband. Therefore, the police utilized a roadblock to confirm their reasonable suspicion. Because the police had reasonable suspicion, their investigatory stop of the vehicle in which Spurlock was a passenger was not unconstitutional. As such, the circuit court did not err in denying Spurlock’s motion to suppress.
 

 ¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF POSSESSION OF AT LEAST ONE KILOGRAM BUT LESS THAN FIVE KILOGRAMS OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS
 
 *815
 
 APPEAL ARE ASSESSED TO PIKE COUNTY.
 

 LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . MBN had received a tip that Jefferson had marijuana at his home.