# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01383-COA

**JEREMY JEROME BROWN**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

DATE OF JUDGMENT:           07/18/2019
TRIAL JUDGE:                HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED:  NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: SCOTT STUART
DISTRICT ATTORNEY:          STEVEN SIMEON KILGORE
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 03/16/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Jeremy Brown was convicted of one count of shooting into a dwelling and two counts of aggravated assault. The Neshoba County Circuit Court sentenced Brown to serve ten years for shooting into a dwelling and twenty years for each count of aggravated assault, with all three sentences to be served consecutively in the custody of the Mississippi Department of Corrections. Brown's post-trial motion was denied. On appeal, he argues that the circuit court erred in denying his motion to suppress because the search warrant used to seize evidence from his home did not comply with Mississippi Rule of Criminal Procedure 4.3. Finding no reversible error, we affirm.

## FACTS

¶2. On January 28, 2019, between 1 a.m. and 2 a.m., the Philadelphia Police Department received several phone calls reporting "shots fired" near Loper Street and Walnut Street. Neshoba County Deputy Todd Adcock assisted the police department by patrolling the area to listen for gunfire. During his patrol, Deputy Adcock noticed a white SUV turn onto Loper Street. He followed the vehicle and heard gunshots. Deputy Adcock also saw multiple muzzle blasts coming from the driver's side window of the vehicle. He briefly stopped, confirmed no one was injured, and continued his pursuit. Deputy Adcock followed the white SUV until it stopped in the driveway of an unknown residence. He notified the police department of the vehicle's location and responded to another call.

¶3. Officer Josh Ray arrived at the residence as Deputy Adcock was leaving. He knocked on the door, but no one answered. Officer Ray went to the white SUV and shined a light through the window. No one was inside the vehicle, but Officer Ray saw shell casings on the floorboard. Brown's sister approached from the end of the driveway and said the vehicle belonged to her. She gave Officer Ray consent to search the vehicle, and he found and collected eight shell casings from two different calibers—7.62 x 39 and .223. Based on law enforcement's investigation, Brown was a person of interest. Officers attempted to locate Brown that night but were unsuccessful.

¶4. The following day around 2 p.m., a confidential informant told Officer Ray that he saw Brown outside 381 Loper Street. Officer Ray immediately obtained a search warrant from Judge Cumberland of the Neshoba County Justice Court. The items to be seized were

a .233 rife, a .45 APC handgun, a 7.62 x 39 rifle, and a .40-caliber handgun. Notably, Judge Cumberland did not put a time on the warrant or list the name of the law enforcement officer to whom the warrant was delivered.[1]

¶5.     Office Ray executed the warrant at 5:10 p.m. that same day. He found and seized the following items: one Ruger pistol, one Diamondback AR-15, a DTI AR-15, a partial box of 7.62 x 39 ammunition, a full box and a partial box of Federal .223 ammunition, a partial box of American Eagle ammunition, an empty 7.62 x 39 magazine, and a clear plastic bag containing a green leafy substance. Brown was arrested at the residence when the items were seized.

¶6.     Tracey Talley and her niece Sunshine Spivey testified at trial. They were in Talley's vehicle when Brown began shooting in their direction. Approximately seven bullets struck Talley's vehicle, but neither Talley nor Spivey was injured. Talley testified that she went to her parents' house on Loper Street to pick up Spivey because Spivey heard gunshots and was scared. As Talley and Spivey were leaving, a white SUV came down Loper Street. The vehicle stopped in front of the house, and the driver opened his door and fired shots. Talley and Spivey crouched to the floorboards of Talley's vehicle as shots were fired at Talley's vehicle and at her parents' house. Talley testified that the shooter drove a white four-door SUV and identified photographs of the vehicle. She also identified Brown and testified that she made eye contact with him before he started shooting. Spivey likewise identified Brown as the driver and shooter and testified that she knew the vehicle belonged to Brown's sister.

---

[1] *See* MRCrP 4.3(3).

3

¶7. During Officer Ray's testimony, Brown moved to suppress the items seized during the search. He argued that the search warrant was invalid because it did not include the "exact time and date" as required by Mississippi Rule of Criminal Procedure 4.3. The court ultimately denied Brown's motion and allowed the items into evidence. The details of the motion to suppress hearing are discussed below.

¶8. The jury found Brown guilty of one count of shooting into a dwelling and two counts of aggravated assault. Brown filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied Brown's motion, which resulted in this appeal.

## STANDARD OF REVIEW

¶9. "When reviewing a trial court's denial of a motion to suppress, this Court adopts a mixed standard of review." *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010) (citing *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)). "Determinations of reasonable suspicion and probable cause are reviewed de novo." *Id*. (citing *Dies*, 926 So. 2d at 917 (¶20); *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999)). "However, we are bound by the trial judge's findings as to the underlying 'historical facts' unless those findings are 'clearly erroneous.'" *Holloway v. State*, 282 So. 3d 537, 542 (¶13) (Miss. Ct. App. 2019) (citing *Dies*, 926 So. 2d at 917 (¶20)).

## ANALYSIS

¶10. Brown's sole argument on appeal is that the search warrant was invalid because it did not specify the time the warrant was issued or the name of the law enforcement officer to

4

whom the warrant was delivered. Thus, he argues that any evidence seized from that invalid search warrant violated his Fourth Amendment right to be free from unreasonable searches and seizures.[2]

¶11. Admittedly, Mississippi Rule of Criminal Procedure 4.3(3) does require such contents to be included:

> Every search warrant issued by the court shall:
>
> (1) command the law enforcement officer to search, within a specified time not to exceed ten (10) days, the person(s) or place(s) named in the search warrant and to return the warrant and an inventory of the thing(s) seized to the court as designated in the warrant;
>
> (2) designate the court to which the warrant and an inventory of the thing(s) seized shall be returned; and
>
> **(3) be signed and dated by the judge, showing the exact time and date and the name of the law enforcement officer to whom the warrant was delivered for execution.**

(Emphasis added).

¶12. During the hearing on Brown's motion to suppress, Officer Ray testified about his request for the search warrant. Shortly after 2 p.m. on January 29, 2019, after he was notified of Brown's whereabouts, he submitted a signed statement of the underlying facts and circumstances and an affidavit to Judge Cumberland. Specifically, Officer Ray stated that gunshots had been fired around 2 a.m. on Loper Street the day before. He further stated that he had spoken with Talley, who told him that as she was backing out of the driveway, Brown, driving a white SUV, started shooting into her vehicle and her mother's house. Officer Ray

---

[2] U.S. Const. amend. IV.

also stated that on January 29, 2019, at 2 p.m. a confidential informant located Brown at 381 Loper Street in Philadelphia, Mississippi.

¶13.  Judge Cumberland, the judge who signed the warrant, also testified during the hearing.  He stated that on January 29, 2019, Officer Ray requested a search warrant.  Based on the totality of circumstances and documents provided to him, he believed that probable cause existed to execute the warrant.  Judge Cumberland signed and dated the warrant but did not specify the time it was issued.

¶14.  Rule 4.3's time-requirement is consistent with the Mississippi Supreme Court's seminal decision in *Taylor v. State*, 137 Miss. 217, 102 So. 267, 268 (1924):

> We think it is necessary that some time shall be fixed in a search warrant for the return thereof, and that after that time it becomes **functus officio**, and cannot be executed.  If the return day named in the warrant does not fix the time limit within which the warrant may be executed, and an officer may retain a warrant in his possession until four days after its return day, and then validly execute it, he may retain it four weeks or four months, or such other time as he may desire.  **We do not think that it was ever contemplated that a search warrant should be held by an officer as a weapon, to be used at his discretion.**

(Emphasis added).  Rule 4.3 requires the warrant's time and date be transfixed in an effort to ensure that the search warrant does not become stale or used as a coercive police tactic. Additionally, Rule 4.3 attempts to give force to prior Mississippi Supreme Court precedent prohibiting unlimited time for the execution of warrant once issued.  *See Taylor*, 137 Miss. 217, 102 So. at 268.  That requirement prohibits the potential for coercive police tactics as recognized by the Mississippi Supreme Court in *Taylor*.

¶15.  Here, the record shows that Officer Ray learned of Brown's location at 2 p.m. on

January 29, 2019, and immediately requested a search warrant. He was the officer who executed the warrant at 5:10 p.m. that same day. The judge who signed and authorized the warrant testified at the suppression hearing about the information provided by the police to him. Based on that information, the judge found probable cause as required by the Constitution before issuing the search warrant. Because the officer executed the warrant within mere hours of its issuance, the laudable goals of execution of the warrant within ten days were met. Although the warrant technically violated Rule 4.3, the search and seizure actions by the government in this case were in conformance with the Constitution. Thus, we find that the warrant's failure to provide the exact time was harmless error because the warrant was clearly executed within hours of issuance and within the mandated ten-day time frame. We further find that the warrant's failure to include the name of the designated officer was harmless error because the record is clear that Officer Ray was the officer who requested and received the warrant. In conclusion, the goals of Rule of 4.3 were met, and to hold the search warrant in this case invalid would, without doubt, put form over substance.[3]

¶16.    Further, Brown's Fourth Amendment rights were not violated because there was probable cause for the warrant.[4] In his request for the search warrant, Officer Ray provided

---

[3] This opinion does not stand as precedent for the proposition that the government can ignore the dictates of Rule 4.3 without consequence. Rather, under the unique circumstances of this case and the arguments presented, the alleged deficiencies concerning compliance with Rule 4.3 were harmless and did not violate constitutional demands.

[4] The Fourth Amendment to the United States Constitution guarantees the following:

The right of the people to be secure in their persons, houses, papers, and

7

ample information connecting Brown to the shooting. Accordingly, we find no reversible error and affirm Brown's convictions and sentences.

¶17.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**

---

effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.