# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00460-SCT

*TAZARIUS COOPER a/k/a T.C.*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2012 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| TRIAL COURT ATTORNEYS: | JOHN HERZOG |
| | TAKIYAH PERKINS |
| | MICHAEL WILLIAMS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHILLIP BROADHEAD |
| | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ELLIOTT GEORGE FLAGGS |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/28/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Based on a citizen's complaint that "young men . . . young black men . . . are standing out on the sidewalks, corners, selling drugs" at the 500 block of Union Street in Greenville, Mississippi, police proceeded to that area, where they spotted Tazarius Cooper, a young, black male. The police officer turned on his blue lights, exited his vehicle, and attempted to conduct an investigatory stop by ordering Cooper to "come here and let me talk to you."

Before the officers could restrain him in any way, Cooper ran. The officers gave chase, following Cooper into a home, where Cooper abandoned a bag containing a blue substance that tested positive for the drug known as ecstasy. The trial court denied Cooper's motion to suppress the evidence, and Cooper was convicted. We find that the citizen's complaint was insufficient to establish a reasonable suspicion of Cooper, or to conduct a *Terry* stop.[1] But because Cooper was not stopped, and because Cooper lacked standing to challenge the search of a home which did not belong to him, we affirm the trial court's decision.

## FACTS AND PROCEDURAL HISTORY

¶2.     Joe Edney, an investigator for the Special Operations Unit of the Greenville Police Department, testified that Lieutenant Redmond[2] received a complaint from an anonymous caller that "young men, young black men, are standing out on the sidewalks, corners, selling drugs" at the 500 block of Union Street in Greenville, Mississippi. Edney was not informed of the anonymous caller's identity, merely that it was a call from a "concerned citizen." At Redmond's direction, Edney and Investigator Charlton Smith[3] proceeded to Union Street in the unit's unmarked, black Ford F-250 truck.

¶3.     Upon arrival at Union Street, Edney and Smith found two men standing "in the sidewalk area" in front of a house located on the 500 block. Edney recognized Cooper from prior narcotics calls. The officers activated the truck's blue lights and exited the vehicle, and Edney commanded Cooper to "come here and let me talk to you." Cooper, however, began

---

[1] *See* ***Terry v. Ohio***, 392 U.S. 1, 88 S. Ct.1868, 20 L. Ed. 2d 889 (1969).

[2] Lt. Redmond did not testify at the hearing on the motion to suppress or at trial.

[3] Smith was also a member of the Special Operations unit.

running toward the house, forced the door open, and continued inside. Edney chased Cooper. The other man – Cooper's friend, Dennis Wright – immediately dropped to his knees and was detained by Smith.

¶4. Edney testified that many of the structures on this block were rundown and dilapidated. In fact, he described this particular house as "very decrepit, [with] holes in the walls, holes in the floor, unlivable." As Edney went up the stairs to enter the house in pursuit of Cooper, he saw Cooper throw a plastic baggie containing a blue substance into a hole in the wall inside the house. According to Edney, "you could see into the living room to where the drywall had either fallen off the wall or that somebody had intentionally took it down, but at that time I saw him throwing something in there."

¶5. Edney entered the house and detained Cooper. He then retrieved the discarded bag from the hole in the wall and discovered that it contained twenty-one blue pills with dolphin imprints, which field-tested positive for ecstasy.

¶6. Edney arrested Cooper and charged him with possession with intent to distribute. Based upon Edney's hearing testimony and argument from counsel, the trial court denied Cooper's motion to suppress and ordered that "all evidence discovered during the search is admissible at trial." The trial court did not support its conclusion with analysis on the record or in the written order.

¶7. Cooper was convicted, and the Court of Appeals affirmed on appeal, finding that the anonymous tip was sufficient for Edney to make the initial investigatory stop.[4] Analyzing

---

[4] ***Cooper v. State***, 2012-KA-00460-COA,____ So. 3d ____, 2013 WL 5614321, *4 (¶ 20) (Miss. Ct. App. Oct. 15, 2013).

3

the tip's reliability, the court found that the "anonymous tip contained sufficient evidence to warrant further investigation" because it "was based on fresh, first-hand information witnessed by the anonymous caller, who gave details about the race and sex of the suspects along with the criminal activity going on at the particular location on Union Street" and because the block was known for heavy drug-trafficking activity.[5]  According to the Court of Appeals, these facts, together with Edney's recognition of Cooper from prior drug-related complaints after arriving to investigate the tip, "corroborated the anonymous tip and gave the officers reasonable suspicion to make an investigatory stop."[6]  Further, the court found both exigent circumstances and probable cause to make the warrantless entry into the home, arrest Cooper, and seize the bag of ecstasy.[7]

¶8.    Cooper filed a petition for writ of certiorari with this Court, arguing that the Court of Appeals "incorrectly applied the law concerning 'reasonable suspicion' based on an anonymous tip sufficient to warrant an investigatory stop."  Because the Court of Appeals reached the correct result, but for the wrong reasons, we granted Cooper's petition.

### STANDARD OF REVIEW

¶9.    We employ a mixed standard of review for Fourth Amendment claims.[8] Determinations of reasonable suspicion and probable cause are subject to de novo review,

---

[5]*Id.* at *5 (¶23) (citing *Baker v. State*, 991 So. 2d 185, 186 (Miss. Ct. App. 2008)).

[6]*Cooper*, 2013 WL 5614321, at *4.

[7]*Id.* at *6 (¶ 28).

[8]*Dies v. State*, 926 So. 2d 910, 917 (Miss. 2006).

4

while determinations of "historical facts [are] reviewed under the substantial evidence and clearly erroneous standards."[9]

## ANALYSIS

### *Edney's Attempted Stop of Cooper*

¶10.    The Fourth Amendment of the U.S. Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee a person's right to be free from unreasonable searches and seizures.[10]  This Court previously has found:

> Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action: (1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause.[11]

¶11.    So it is clear that *before* conducting an investigatory, or *Terry* stop, officers are required to have "reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in a felony. . . or 'some objective manifestation that the

---

[9]*Id.*

[10]*See* U.S. Const. amend IV; Miss. Const. art 3, §23.

[11]*Williamson v. State*, 876 So. 2d 353, 355 (Miss. 2004) (quoting *Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975)).

5

person stopped is or is about to be engaged in criminal activity.'"[12] Reasonable suspicion can arise from an officer's personal observations, a tip by a trusted police informant, or by anonymous tip.[13] And an anonymous tipster's "veracity," "reliability," and "basis of knowledge" are relevant considerations in establishing reasonable suspicion.[14]

¶12. Although the U.S. Supreme Court previously has opined that "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,"[15] it also has held that "there are situations in which an anonymous tip, *suitably corroborated*, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'"[16] We have held that "[r]easonable suspicion is dependent upon the content of the information possessed by the detaining officer as well as its degree of reliability. Both factors – quantity and quality – are considered in the 'totality of the circumstances.'"[17]

¶13. So we are left to determine whether an anonymous tip – "young men, young black men, are standing out on the sidewalks, corners, selling drugs" at the 500 block of Union

---

[12]*Id.* (emphasis added) (quoting *Floyd v. State*, 500 So. 2d 989, 992 (Miss. 1986)); *see also* *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[13]*Florida v. J.L.*, 529 U.S. 266, 270-271, 120 S. Ct. 1375, 1378-1379, 146 L. Ed. 2d 254 (2000).

[14]*Alabama v. White*, 496 U.S. 325, 328-329, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990).

[15]*Id.*

[16]*J.L.*, 529 U.S. at 270 (quoting *White*, 496 U.S. at 329).

[17]*Williamson*, 876 So. 2d at 355 (quoting *Floyd*, 749 So. 2d at 118).

Street – demonstrates the tipster's veracity, reliability, and basis of knowledge to support a finding of reasonable suspicion before Edney stopped Cooper. We find that it does not.

¶14. This Court previously has found anonymous tips providing police with much more detailed information than the tip in the instant case to be "vague" at the outset, but the officer's independent investigation and corroboration of the details – *before* stopping the suspect – established reasonable suspicion for an investigatory stop.[18]

¶15. For instance, in *McClellan v. State*, the Columbus police department received a tip that a white male and white female had purchased large quantities of pseudoephedrine (a main ingredient for methamphetamine) at the local Fred's Dollar Store.[19] Officers further investigated the tip and gained a description of the vehicle, "an older-model blue Mustang with an Alabama tag . . . traveling east on the Highway 82 bypass," which then allowed them to locate and maintain surveillance on the suspects as they made additional purchases at other pharmacies.[20] This Court observed that the initial description of the car "may have been somewhat vague," but we held the stop was proper because the police accumulated many more details about the suspects and their activities before making the stop.[21]

¶16. Similarly, in *Linson v. State*, a case with facts similar to this case, police received a tip from a confidential informant that "three black males were selling drugs at the intersection of Kingsway Drive and Brooksdale Drive in Picayune," an area known for illegal

---

[18]*Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).

[19]*McClellan v. State*, 34 So. 3d 548, 550 (Miss. 2010).

[20]*Id*.

[21]*Id*. at 552.

7

drug activity.[22] Investigating the tip, a police officer found the three black men standing at the intersection as described.[23] He then watched the men approach two different vehicles for brief meetings, after which the vehicles would drive away, consistent with drug-trafficking activity.[24] Officers detained Linson, and a patdown revealed a .22 caliber revolver in Linson's pants pocket, which led to his conviction for possession of a firearm by a convicted felon. The Court of Appeals found that Linson's investigatory stop and frisk were justified because the tip was received from a confidential informant who had been reliable in the past and because of the suspicious activity witnessed when investigating the facts of the tip.[25]

¶17. The U.S. Supreme Court also determined that an anonymous tip that a "young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun" did not show sufficient indicia of reliability to find reasonable suspicion for an investigatory stop.[26] Officers investigated the tip and found three black males at the bus stop, and one of them – J.L. – was wearing a plaid shirt.[27] Officers frisked J.L and found a gun; he was then charged for carrying a concealed firearm without a license and possessing a firearm while under the age of 18.[28] The Court concluded, "[a]ll the police had to go on in this case was

---

[22]*Linson v. State*, 799 So. 2d 890, 892 (Miss. Ct. App. 2001).

[23]*Id*.

[24]*Id.*

[25]*Id*. at 896.

[26]*J.L.*, 529 U.S. at 268.

[27]*Id*.

[28]*Id*. at 268-269.

the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L."[29] Accordingly, the Court found that police lacked reasonable suspicion to make the initial stop and the fruit of the unlawful search – the gun – was properly suppressed.[30]

¶18.    An anonymous tip that accurately predicts the suspect's future behavior, as determined after corroboration of the facts by independent police investigation, can provide reasonable suspicion to conduct an investigatory stop.[31] For instance, in ***Alabama v. White***, police received an anonymous tip that White would be leaving from "235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lense broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case."[32] Investigators observed a woman in the brown vehicle as described, leaving building 235 of Lynwood Terrace Apartments and driving the most direct route to the motel.[33] Officers conducted an investigatory stop just before she reached the motel and discovered marijuana in the attaché case and cocaine in her purse.[34] The Supreme Court specifically noted that *this tip, standing*

---

[29]*Id*. at 274.

[30]*Id.*

[31]*White*, 496 U.S. at 332.

[32]*Id.* at 327.

[33]*Id.*

[34]*Id*.

*alone, would not have justified a **Terry** stop.*[35] But, because the tip – after corroboration by police – accurately predicted White's future behavior, it demonstrated a "special familiarity with [the suspect's] affairs" which in turn implied that the tipster had "access to reliable information about that individual's illegal activities."[36] As such, the Court held that there was sufficient indicia of reliability to justify an investigatory stop.[37]

¶19.    Considering the "totality of the circumstances" in the case before us today, we find that the anonymous tip lacked sufficient "indicia of reliability" to form reasonable suspicion before stopping Cooper.  The tip was significantly less detailed than those in ***White*** and ***McClellan***, with just a general description of the race and gender of the suspect(s), a generic allegation of illegal drug activity, and the general area in which the activity was occurring. Unlike ***Linson***, the caller did not identify the number of men engaging in illegal drug activity or a specific location where these events occurred.  And, unlike ***J.L.***, there was no identification of the suspects by physical attributes, such as clothing, or other distinguishing features.

¶20.    Because the tipster was vague in his or her description, there were no details suggesting that the tipster possessed "inside information" about Cooper's identity or his involvement in alleged drug trafficking on Union Street.  Likewise, the tip contained no predictive information to test the tipster's basis of knowledge or veracity.

---

[35]***Id***. at 329 (emphasis added).

[36]***Id***. at 332.

[37]***Id.***

¶21.    Of equal importance is the fact that Edney conducted no independent investigation to corroborate the few details provided in the tip or to accumulate more information about the alleged drug trafficking activity *before* stopping Cooper.  Edney and Smith merely proceeded to the 500 block and attempted to stop Cooper and Wright, the first black males they observed in the vicinity.   While Edney's knowledge of Cooper's identity from prior narcotics-related complaints may only slightly bolster the tip's credibility, this fact alone does not elevate an otherwise unreliable tip to the level of creating reasonable suspicion.  Even the most detailed of tips, as in *White*, did not give rise to reasonable suspicion to conduct a *Terry* stop until *after* investigation of the details.

¶22.    Rather than solely relying on the area's reputation for drug trafficking and his familiarity with Cooper's identity, which says little as to what Cooper was doing on the 500 block of Union street that morning, Edney should have accumulated additional "specific and articulable facts" to determine if a reasonable basis existed to believe Cooper was engaged in the illegal sale or possession of narcotics, similar to the course of action officers took in *Linson*.

¶23.    Having established that Edney lacked reasonable suspicion to conduct a *Terry* stop, we must now analyze the facts of the stop to determine if Edney's initial interaction with Cooper was an actual *Terry* stop.

   ***Whether the stop implicates the Fourth Amendment***.

11

¶24. The constitutional prohibition against unreasonable searches and seizures applies equally to "seizures of the person, including brief investigatory stops"[38] involving the "temporary detention"[39] of a suspect.[40] So, Cooper must have been "seized" or "temporarily detain[ed]" by Edney before his flight from questioning to trigger Fourth Amendment protection. As the Supreme Court explained in *Terry*:

> Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred."[41]

¶25. Further, a suspect is "seized . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[42] So long as a person feels free to "to disregard the police and go about his business," the encounter would be considered consensual, with no reasonable suspicion required.[43]

¶26. We find that the initial encounter between Edney and Cooper was neither voluntary nor consensual. Edney attempted to detain Cooper with a show of authority by flashing his blue lights and commanding Cooper to "come here and let me talk to you for a minute." A

---

[38] *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (Miss. 1999);

[39] *Singletary*, 318 So. 2d at 876.

[40] *Terry,* 392 U.S. at 15.

[41] *Id*. at 19, n.16.

[42] *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *Goff v. State*, 14 So. 3d 625, 641 (Miss. 2009).

[43] *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) (quoting *California v. Hodari,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L. Ed. 2d 690 (1991)).

reasonable person in the same situation would not be given the impression that he was free to "disregard the police and go about his business."[44] But our inquiry does not end here.

¶27. In *California v. Hodari*, the U.S. Supreme Court held that, absent the use of physical force, a "seizure" requires *submission* to an officer's show of authority.[45] In *Hodari*, a group of youths who had gathered on the street dispersed and took flight when an unmarked police car began to approach.[46] Before he was physically detained by officers, Hodari abandoned a small rock of crack cocaine.[47] The Supreme Court found that the defendant was not "seized" at the time he abandoned the drugs because Hodari did not comply with the detaining officer's show of authority – an order to halt.[48] Rather, Hodari was "seized" at the time he was tackled by police, which occurred *after* he abandoned the drugs.[49] So the

---

[44]Although we have not squarely addressed the issue of whether the use of blue lights is a show of authority amounting to a "seizure" for Fourth Amendment purposes, other jurisdictions have and have answered this question in the affirmative. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 245 n.43 (Tex. Crim. App. 2008) ("use of 'blue flashers' or police emergency lights are frequently held sufficient to constitute a detention" while use of "a patrol car spotlight" does not alone suffice to establish a "seizure" but is a contributing factor); *Commonwealth v. Smigliano*, 694 N.E.2d 341, 343-344 (Mass. 1998) (where an officer activated his blue lights behind defendant's stopped car and got out of his cruiser to approach determined by the court to be a "seizure" because "a reasonable person, on the activation of a police car's blue lights, would believe that he or she is not free to leave"); *State v. Yeargan*, 958 S.W. 2d 626, 629-630 (Tenn. 1997) (defendant "seized" when officer followed him into a parking lot and activated the cruiser's blue lights).

[45]*Hodari*, 499 U.S. at 626 (emphasis in original).

[46]*Id.* at 622-623.

[47]*Id*. at 623.

[48]*Id*. at 626-628.

[49]*Id*. at 629.

evidence of the crack cocaine was not the fruit of an illegal seizure, and was properly admitted at trial.[50]

¶28. Like *Hodari*, Cooper did not yield to Edney's show of authority – a command to "come here and let me talk to you." Instead, he immediately began to flee after hearing Edney's command. Thus, we find that – even though the officers lacked reasonable suspicion to conduct a *Terry* stop – Cooper was not "seized" until *after* he ran, discarded the drugs, and was detained by Edney. So we affirm the trial court's denial of Cooper's motion to suppress – not because the officers had reasonable suspicion sufficient for a *Terry* stop – but because the *Terry* stop never took place.

### *Edney's Pursuit and Arrest of Cooper*

¶29. Although Edney lacked reasonable suspicion to conduct a *Terry* stop before his initial interaction with Cooper, based upon the totality of the circumstances, we find that Cooper's flight gave rise to reasonable suspicion sufficient for Edney to follow in pursuit. On this issue, the Supreme Court has determined that "[h]eadlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."[51] Furthermore, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."[52] On the other hand, the Supreme Court also has found that where an officer, lacking reasonable suspicion or probable cause, "approaches an

---

[50]*Id*.

[51]*Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

[52]*Id.*

14

individual, the individual has a right to ignore the police and go about his business."[53] And

"'any refusal to cooperate, without more, does not furnish the minimal level of objective

justification needed for a detention or seizure.'"[54]

¶30.	But this was not a situation where Cooper was merely exercising his right to disregard

the police and go about his business.  In fact, at trial, Edney testified that, as he exited the

vehicle to approach Cooper, "Mr. Cooper was already starting to back off a little bit."

Clearly, this was an act of evasion upon approach of police, which, combined with Edney's

prior knowledge of the area's reputation for drug trafficking and criminal activity[55] and

history associated with Cooper, gave rise to a suspicion that Cooper was somehow associated

with illegal activity. So, even before seeing Cooper throw the bag of ecstasy into the wall,

Edney was justified in his pursuit of Cooper for the purpose of completing his *Terry* stop.

### *Warrantless Entry into the Home*

¶31.	After determining that the *Terry* stop was supported by reasonable suspicion, the

Court of Appeals concluded that Cooper's flight and abandonment of the ecstasy gave rise

to exigent circumstances[56] – hot pursuit – which justified the warrantless entry into the

---

[53]*Id.* (citing *Florida v. Royer*, 460 U.S. 491, 498, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)).

[54]*Id.* (quoting *Florida v. Bostick*, 501 U.S. at 437).

[55]That a stop occurred in a "high crime area" is a "permissible contextual consideration[] in a *Terry* analysis." *Wardlow*, 528 U.S. at 124 (citing *Adams*, 407 U.S. at 144, 147-148).

[56]*See* *Elkins v. McKenzie*, 865 So. 2d 1065, 1083-1084 (Miss. 2003) (warrantless entry into a home justified if the state can prove the presence of "exigent circumstances," including hot pursuit of a suspected felon, the possibility that evidence in the residence may be destroyed or removed, and danger to the lives of officers or others in the residence.)

15

residence and the arrest of Cooper.[57] And, because officers were in the residence under the exigent circumstance of hot pursuit, they were permitted to "seize evidence in plain view during the course of their search."[58] Additionally, the court found that the concern for the destruction of drugs was an exigency supporting the warrantless search. And the court concluded that there was probable cause for his arrest, since Edney witnessed Cooper throw the bag of ecstasy in the wall, thus giving rise to a reasonable belief that the offense of possessing drugs had occurred in his presence.[59]

¶32. We need not address the question of whether exigent circumstances or probable cause justified Edney's entry into the home to arrest Cooper. The issue presented in Cooper's motion to suppress and in his brief to the Court of Appeals was whether the ecstasy was the "fruit of an illegal search of the residence wherein the defendant was located." In his motion to suppress, Cooper alleged that the "officers did not have a search warrant to search the residence that the defendant was in, nor did any of the circumstances exist that fall within the enumerated exception[s] to the warrant requirement." So, according to Cooper, Edney violated the prohibition of unreasonable searches and seizures. Such an argument and assignment of error is logical, because Edney saw Cooper abandon the drugs in the house before he was detained, and therefore, the drugs were not the fruit of his arrest. However, Cooper lacked standing to challenge the warrantless search of the home because he lacked a legitimate and reasonable expectation of privacy there.

---

[57] *Cooper*, 2013 WL 5614321, at **5-6 (¶¶25, 27).

[58] *Id.*

[59] *Id.*; *see also* Miss. Code Ann. § 99-3-7(1) (Rev. 2007).

¶33. The Fourth Amendment of the U.S. Constitution and Article 3, Section 23 of the Mississippi Constitution protects *occupants* of a home from warrantless and nonconsensual entry by police.[60] But to claim protection under the Fourth Amendment, a defendant must have a "legitimate expectation of privacy in the invaded place,"[61] typically restricted to those who rent, own, or otherwise reside in the dwelling. The Supreme Court extended this protection to "overnight guests" as "[s]taying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society."[62]

¶34. This Court also has identified situations where suspects, present on the property of another (presumably with permission), lacked a reasonable expectation of privacy.[63] For instance, in *Hopson v. State*, this Court found that the defendant lacked an expectation of privacy for drugs seized during the search of his sister's house.[64] The search was the product of a sting operation, which revealed Hopson's drug-trafficking activity within his sister's home.[65] In finding that Hopson lacked a legitimate expectation of privacy in his sister's home, the Court relied on the fact that the defendant did not have a key to the house; he did

---

[60] *Minnesota v. Olson*, 495 U.S. 91, 95, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990) (emphasis added) ("'[A]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and the be free from unreasonable governmental intrusion.'"); *Payton v. New York*, 445 U.S. 573, 589-590, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (quoting *Silverman v. U.S.*, 365 U.S. 505, 511, 81 S. Ct. 679, 683, 5 L. Ed. 2d 734 (1961).

[61] *Olson*, 495 U.S. at 95.

[62] *Id.*

[63] *See Hopson v. State*, 625 So. 2d 395, 401 (Miss. 1993).

[64] *Id.*

[65] *Id*.

17

not have the freedom to come and go as he pleased or to exercise "control" over the premises; and that he maintained a permanent residence elsewhere.[66] Thus, he was a "guest" with no "control over the premises to such a degree that he would have an expectation of privacy that would invoke his right to object to the search and subsequent seizure of contraband pursuant to the Fourth Amendment."[67]

¶35. Here, it is clear that Cooper did not have a reasonable expectation of privacy when he entered the house in question. Cooper admitted that he did not live there, and Edney testified at the hearing on the motion to suppress that he knew the actual occupant of the home. Further, Cooper provided a home address on a different street in Greenville at the time of his arrest. Edney also testified that Cooper had to force open the door to enter, which also suggests that he did not have a right to be inside the dwelling. Because Cooper discarded the ecstasy before being seized or detained by Edney, in a home in which he did not have a reasonable expectation of privacy, we find that the search of the home and seizure of the evidence were proper.

**CONCLUSION**

¶36. The officers lacked reasonable suspicion to conduct a *Terry* stop of Cooper. But when the officers initially approached Cooper and ordered him to "come here and let me talk to you," Cooper failed to obey. Instead, he ran before the officers exercised any physical restraint. Therefore, no *Terry* stop took place. And because Cooper lacked standing to challenge the search of the home that did not belong to him and seizure of the drugs he

---

[66]*Id*.

[67]*Id.*

discarded therein, the trial court correctly denied Cooper's motion to suppress evidence obtained in the search. We affirm the judgments of the Court of Appeals and the Washington County Circuit Court.

¶37. **CONVICTION OF POSSESSION OF ECSTASY WITH INTENT TO DISTRIBUTE AND SENTENCE OF SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO (2) YEARS TO SERVE FOLLOWED BY FIVE (5) YEARS POST RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY TO ANY OTHER SENTENCE CURRENTLY BEING SERVED.**

**WALLER, C.J., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. PIERCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**