# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00729-COA

**REGIE DALE GOODSON A/K/A REGIE                    APPELLANT
GOODSON A/K/A REGGIE D. GOODSON A/K/A
RIGGIE GOODSON**

**v.**

**STATE OF MISSISSIPPI                                           APPELLEE**

DATE OF JUDGMENT:           04/06/2023
TRIAL JUDGE:                HON. STANLEY ALEX SOREY
COURT FROM WHICH APPEALED:  SMITH COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    W. TERRELL STUBBS
                            JOHN LANGSTON SCARBOROUGH
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: DANIELLE LOVE BURKS
DISTRICT ATTORNEY:          CHRISTOPHER DOUGLAS HENNIS
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 04/15/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND WEDDLE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    This appeal stems from Regie Dale Goodson's conviction and sentence for possession of methamphetamine in Smith County.  Goodson was convicted by a Smith County jury, and the Smith County Circuit Court sentenced him to serve six years as a habitual offender day-for-day in the custody of the Mississippi Department of Corrections.  Goodson appeals his conviction and sentence on the basis that the trial court erred in denying his motion to suppress evidence, that the trial court abused its discretion in granting the State's motion in limine, and that the trial court erred in denying his motion for a judgment notwithstanding

the verdict (JNOV) or a new trial. After a review of the record, we affirm the trial court's judgment of conviction and sentencing.

## FACTS AND PROCEDURAL HISTORY

¶2. On July 3, 2020, Landon Ates, who was a narcotics investigator with the Smith County Sheriff's Department at the time, came in contact with Goodson in the middle of a public county road in Smith County. Initially, Ates had been called to the location because of a 911 call that had been made regarding a disturbance. Joel Houston was also called to the scene of the disturbance, along with Ates.

¶3. Upon arriving at the home, Ates and Houston noticed blood on the porch. After assessing the scene and speaking to witnesses, Ates and Houston began looking for a suspect named Austin Sanders, who had gotten into an argument with his mother and cut his arm when he punched the glass out of the front door of the home. As Ates and Houston were walking back to their patrol vehicles to begin patrolling to locate Sanders, they saw Goodson standing in the middle of the street. Goodson had come from his residence across the street. Goodson was not a person of interest related to the 911 call.

¶4. When Goodson saw the officers, Goodson approached them and asked them who they were looking for. Goodson got approximately arm's length away from the officers in the middle of the road. At this point, Ates noticed a "clear baggy sticking out of [Goodson's] watch pocket with a crystal-like substance." Ates testified that the entire bag was not sticking out of Goodson's watch pocket—only a part of it—but it was sticking out "enough

2

to see the methamphetamine inside of it." Ates then grabbed the part of the clear bag that was sticking out of Goodson's pocket and removed the bag from the pocket. When Ates was asked why he grabbed the clear bag from Goodson's pocket, Ates testified that "[i]t was in plain view." Ates asked Goodson what was inside the bag, and Goodson responded that it contained methamphetamine. Ates did not search Goodson's person any further and did not search his property, vehicle, or home. Ates did not arrest Goodson at that time because officers were acting under COVID-19 protocol restrictions and were directed to arrest only violent offenders.[1]

¶5.    Ates confiscated the plastic bag and secured it in his patrol vehicle, while he and Houston continued looking for the suspect. After patrolling and failing to locate Sanders, Ates returned to the Smith County Sheriff's Department, where he locked and logged the bag into evidence. Scott Kelly, also a narcotics investigator for the Smith County Sheriff's Department, was the assigned evidence custodian for the methamphetamine that was obtained. As evidence custodian, Kelly was responsible for driving the sealed evidence bag containing the suspected methamphetamine to and from the Mississippi Forensics Laboratory for testing.

¶6.    Raeven Williams was employed as a forensic scientist at the Mississippi Forensics Laboratory when Kelly took the evidence bag to the lab. Williams worked in the controlled substance analysis division. Williams was not the scientist who tested the crystal-like

---

[1] Goodson was not arrested until January 25, 2022, upon the grand jury capias.

substance; however, she acted as a technical reviewer, which means she reviewed the reports, observations, and work packet that were put together by the scientist assigned to the evidence. As a technical reviewer, Williams was able to confirm that the substance was in fact methamphetamine, and it weighed 0.24 grams.

¶7. On March 27, 2023, a few days prior to Goodson's trial, he filed a motion to suppress evidence, which was heard at the start of Goodson's trial. Goodson contended that the basis of the motion was that the bag Ates had confiscated was the fruit of an illegal search of Goodson's person. After hearing testimony from Ates, the trial court denied Goodson's motion. Goodson renewed his motion at the end of trial, and the trial court denied it once more. The court granted the State's motion in limine to suppress previous instances of bias by law enforcement against him in justice court.

¶8. At the end of Goodson's trial, the jury found him guilty of possession of methamphetamine. During the sentencing phase, the trial judge stated that because this was Goodson's third felony, he would be sentenced as a habitual offender. For this reason, the trial court sentenced him to serve six years in custody day-for-day. Goodson now argues on appeal that the trial court erred in denying his motion to suppress evidence, abused its discretion in granting the State's motion in limine, and erred in denying his motion for a JNOV.

**STANDARD OF REVIEW**

¶9. We use a "mixed standard of review" for the denial of a motion to suppress under the

4

Fourth Amendment. *Holloway v. State*, 282 So. 3d 537, 541-42 (¶14) (Miss. Ct. App. 2019) (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss 2006)). "Determinations of . . . probable cause should be reviewed de novo." *Dies*, 926 So. 2d at 917 (¶20). However, we are bound by the trial judge's findings as to the underlying "historical facts" unless those findings are "clearly erroneous." *Id.* This Court reviews a trial judge's ruling on a motion in limine for an abuse of discretion. *Rogers v. Thames*, 309 So. 3d 1154, 1160 (¶12) (Miss. Ct. App. 2021) (citing *Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 201 So. 3d 1046, 1052 (¶6) (Miss. 2016)). The standard of review for a denial of a motion for a JNOV is de novo. *Johnson v. St. Dominics-Jackson Mem'l Hosp.*, 967 So. 2d 20, 22 (¶3) (Miss. 2007).

## DISCUSSION

### I. Motion to Suppress Evidence

¶10. Goodson asserts that the trial court erred in denying his motion to suppress the plastic bag containing the methamphetamine that Ates removed from Goodson's pocket.

¶11. "The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee a person's right to be free from unreasonable searches and seizures." *Boler v. State*, 306 So. 3d 846, 848 (¶9) (Miss. Ct. App. 2020) (quoting *Cooper v. State*, 145 So. 3d 1164, 1168 (¶10) (Miss. 2014)). "As a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies." *Id.* (quoting *Galloway v. State*, 122 So. 3d 614, 669 (¶182) (Miss. 2013)). However, the plain-view doctrine holds that "no warrant is required to seize an object in

5

plain view when viewed by an officer from a place he has the lawful right to be, its incriminating character is readily apparent and the officer has a lawful right of access to the evidence." *Johnson v. State*, 999 So. 2d 360, 364 (¶18) (Miss. 2008) (quoting *McKee v. State*, 878 So. 2d 232, 236 (¶9) (Miss. Ct. App. 2004)).

¶12.   When the plastic bag was taken from Goodson's watch pocket, he was standing in the middle of a public county road in Smith County.  Ates and Houston had been dispatched there after a 911 call was made about a domestic disturbance.  When walking back to their patrol vehicle to leave the scene, Goodson stopped the officers in the road to ask them who they were looking for.  Goodson was standing "two to three feet max" away from the officers, and it only took Ates about thirty seconds to notice the plastic bag sticking out of Goodson's pocket.

¶13.   During the suppression hearing, Ates testified that the reason he retrieved the bag from Goodson's pocket was because it was in "plain view," although Ates could not testify with certainty the approximate portion of the bag that was protruding from Goodson's watch pocket.  He did testify with certainty, however, that he immediately noticed a crystal-like substance in the portion of the bag that was visible.  Furthermore, Ates' position at the time with the Smith County Sheriff's Department was as a narcotics investigator, and Ates testified that he had attended several schools over the years as part of his training, including "narcotics school."   As a narcotics investigator, Ates had prior knowledge of methamphetamine and how to identify the illegal substance.

6

¶14. Therefore, because Ates was lawfully in the middle of a public county road when approached by Goodson, and because the crystal-like substance in the portion of the plastic bag that was sticking out contained what was readily apparent to be an illegal substance, Ates satisfied an exception to the warrant requirement under the plain-view doctrine. Thus, the trial court did not err in denying Goodson's motion to suppress this evidence at trial.

## II. Motion in Limine

¶15. The next issue that Goodson raises on appeal is that the trial court abused its discretion in granting the State's motion in limine, denying him the opportunity to raise the defense of bias against him by the Smith County Sheriff's Department.

¶16. "There is no abuse of discretion in granting a motion in limine if the court determines that (1) the material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Moore v. Miss. Farm Bureau Cas. Ins. Co.*, 387 So. 3d 1019, 1024 (¶17) (Miss. Ct. App. 2023) (quoting *Bay Point Props. Inc.*, 201 So. 3d at 1052 (¶6)), *cert. denied*, 387 So. 3d 63 (Miss. 2024).

¶17. "For evidence of bias or interest to be admissible under Mississippi Rule of Evidence 616, it must have the tendency, in the case being tried, to make the facts to which the witness testified less probable than they would be without the evidence of bias." *Robinson v. State*, 247 So. 3d 1212, 1225 (¶25) (Miss. 2018) (internal quotation marks omitted). "We recognize that 'Mississippi allows wide-open cross-examination of any matter that is relevant, including

the possible interest, bias, or prejudice of the witness.'" *Mohamed v. State*, 323 So. 3d 532, 544 (¶31) (Miss. Ct. App. 2021) (quoting *Anthony v. State*, 108 So. 3d 394, 397 (¶6) (Miss. 2013)). However, the admissibility of such evidence is limited by Rule 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403; *Pettus v. State*, 295 So. 3d 993, 1001 (¶30) (Miss. Ct. App. 2020).

¶18. At trial, Goodson attempted to present evidence of other charges that were brought against him in the Smith County Justice Court. The particular documents sought to be introduced were an affidavit and a document moving to dismiss the justice court case, both of which Ates had signed. Further, Goodson asserts that he was denied the opportunity to question the State's witnesses about two prior occasions of officers stopping him at a roadblock, denying him the constitutional right to confront the witnesses against him.

¶19. The trial court granted the State's motion in limine and "direct[ed] the Defendant and his Attorney from mentioning, inferring, soliciting testimony from *any* witness, or communicating or causing to be communicated in any other manner, in the presence of the Justice Court Documents charging and/or dismissing any pending charge against Regie Dale Goodson." The trial court found that the prior justice court charges and the roadblock encounters were not probative to the guilt or innocence on the charge of possession of methamphetamine. The trial court stated that it did not believe the procedural history

8

attempted to be produced would do anything other than "confuse the jury."

¶20. The trial court also informed Goodson that even though the motion in limine was granted before trial, he would be allowed to make a proffer when he cross-examined them and at that point, if compelled, the trial court could reverse its ruling on the motion in limine. Goodson made his proffer during Ates' testimony on cross-examination. The trial court stated that the two roadblock stops were irrelevant to the case at hand. The trial court further cautioned Goodson about "opening that door" because it would then allow the State to bring up any other stops or encounters with Goodson, which still would likely not be relevant to the possession of methamphetamine and would likely just confuse the jury.

¶21. The justice court charges and the two prior roadblock encounters were not relevant to the charge of possession of methamphetamine. The justice court charges were first brought because of a COVID-19 pandemic-related procedure but were subsequently dropped in pursuit of a grand jury indictment. Moreover, the two roadblocks where Goodson encountered Smith County Sheriff's Department officers occurred after the initial interaction on July 3, 2020. Nothing in the record affirmatively shows that either roadblock stop was due to a bias against Goodson or that the stops were conducted with any relevance to the possession of methamphetamine.

¶22. For these reasons, we find that the trial court did not abuse its discretion in granting the State's motion in limine and denying Goodson the opportunity to raise the defense of bias by the Smith County Sheriff's Department.

### III. Post-trial Motion

¶23. Goodson contends that the trial court erred in denying his post-trial motion for a JNOV or, in the alternative, a new trial. An order denying a motion for a JNOV challenging the sufficiency of the evidence is reviewed de novo. *Rainey v. State*, 334 So. 3d 1124, 1128 (¶6) (Miss. 2022). The court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Body v. State*, 318 So. 3d 1104, 1108 (¶11) (Miss. 2021).

¶24. Goodson concedes in his brief that "[i]t is clear from the evidence presented to the jury that the essential elements of the crime could be found by a rational trier of fact." But he challenges that "it is the evidence that should have been admitted, but was suppressed by the trial court, that would lead any rational trier of fact to believe the evidence is insufficient to support a conviction." Specifically, if Goodson "would have been permitted to show evidence of bias and/or inconsistencies in the evidence log tending to show a break in the chain of custody . . . a rational trier of fact would not have found all the essential evidence beyond a reasonable doubt."

¶25. Given that we find that the trial court did not err in denying Goodson's motion to suppress evidence or abuse its discretion in granting the State's motion in limine, and given his confession, we find that the trial court did not err in denying Goodson's JNOV motion.

¶26. Goodson alternatively moved for a new trial and "challenges the weight of the

10

evidence." *Sheffield v. State*, 749 So. 2d 123, 127 (¶16) (Miss. 1999). When reviewing the weight-of-the-evidence argument on appeal, the Court "must not disturb the jury's verdict unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Gunn v. State*, 374 So. 3d 1206, 1212 (¶21) (Miss. 2023). Goodson again asserts that if the trial court had granted his motion to suppress and denied the State's motion in limine, the overwhelming weight of the evidence would have been contrary to the verdict. Because these arguments are without merit, as discussed above, the court did not abuse its discretion in denying Goodson's motion for a new trial.

## CONCLUSION

¶27. After a review of the record, we hold that the trial court made no reversible error in denying Goodson's motion to suppress or his post-trial motions, and the court did not abuse its discretion by granting the State's motion in limine. Accordingly, we affirm Goodson's conviction and sentence.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**

11